## Commonwealth v. Sherk

*Philip H. Feather*, for petitioner.
*Joseph M. Hill*, for Commonwealth.

GATES, P. J., July 17, 1967.—On May 10, 1966, petitioner filed his application with us for a writ of certiorari, alleging that, on April 26, 1966, a charge of violating an ordinance of the City of Lebanon was initiated against him.

The petition discloses that the charge was brought under Ordinance No. 705.01 of the Codified Ordinances of the City of Lebanon, Pa. The charge was instituted in the office of the City Magistrate, Municipal Building, Lebanon, Pa. Petitioner states that he was required to post bond in the amount of $61 and was told to return for trial the next day at 7 p.m.

On April 27, 1966, at a hearing held in the Municipal Building, the magistrate found petitioner guilty "without any testimony given by either police or in-

formant, nor was a complaint signed by informant nor served upon your petitioner". Petitioner prays the issuance of the writ, because (a) no summons or warrant was served upon petitioner; (b) the hearing was not scheduled "no less than five nor more than eight days" after issuance of summons and, therefore, was improper, and the city magistrate had no jurisdiction; (c) evidence or testimony was not properly introduced; (d) your petitioner was not advised of his rights to remain silent or to engage an attorney, and (e) a police report rather than an information does not satisfy the procedural rule.

No answer was filed to the petition, and, on May 13, 1966, the magistrate returned three instruments to court. The one instrument is an information styled in the name of the Commonwealth purporting to be a "charge-summary violation of City Ordinance".

The second document returned by the magistrate is a printed form with the blanks completed in type titled at the top "City of Lebanon, Pa.—Bureau of Police—Report of Arrests". At this point, we make note that the report of arrest is purportedly signed by Virginia G. Reichart and Anthony Verna and is, for some undisclosed reason, signed by the committing magistrate.

The third instrument returned to us, although it is not identified as a transcript, nor is it sworn or certified to be a copy of the magistrate's docket, does appear to be a report by the committing magistrate of the hearing.

Subsequent to the magistrate's return, this case was scheduled for argument, and written briefs have been submitted to us.

We have an aversion to being super-advocates, and we firmly believe we ought to confine ourselves to the issues raised by the parties. But we are here dealing with a long neglected area of the jurisprudence of this

Commonwealth which disturbs not only us but the citizens of the Commonwealth as well.

Considerable criticism, some just and some unjust, has been leveled at the minor judiciary and concerted efforts are being made to abolish it. We do not intend here to take a stand or express an opinion upon the subject but rather go beyond the issues raised by counsel with the idea of being of some guidance to the minor judiciary.

In this Commonwealth, since the adoption of the Constitution in 1776, provision has been made for justices of the peace,[1] not learned in the law. Our ancestors were not the inventors of the office, for justices of the peace existed in early England, and we merely adopted the office and assigned to it similar duties and responsibilities.

Necessity was the mother of the minor judiciary. There were insufficient citizens in this Commonwealth trained in the law to staff the multitude of minor courts made necessary by the expanding population and the complexities of expanding growth. We seriously question whether or not this situation still exists in this Commonwealth in the interior counties. Be that as it may, justices of the peace, magistrates or aldermen are judges. Make no mistake about it; when the governor places his hand upon the shoulder of an elected or appointed citizen to perform the duties of the justice of the peace, he is just as much a judge as those trained in the law and garbed in black robes. The liberty and property of our citizens are in his hands. For the average man, his only exposure to the

---

[1] Aldermen and justices of the peace are "magistrates" within the meaning of that term as used in the constitutional provision relating to the judicial power. Pennsylvania Constitution, art .5, sec. 1. Consequently, the designation as alderman or justice of the peace or magistrate is historic but of no practical distinction.

judicial process will be his rare contact with the minor judiciary.

John Binns, writing a preface to his 1840 edition of Binns' Justice, aptly noted that, "Justices of the peace who understand their rights and discretely perform their duties, obtain the respect of their fellow citizens".

In order for a justice of the peace or alderman to obtain the respect of his fellow citizens, it is, of course, necessary that he understand and fairly apply legal process. A characteristic common among the minor judiciary is an overinvolvement in the merits of a case, coupled with a callous disregard for the procedural rights of the citizens, frequently characterizing them as "technicalities". All too frequently the real reason for the procedural rights of the citizens is overlooked in the heat of a partisan participation in the merits of the controversy by the squire. This is, of course, injudicial and does not present to the public the image of a judge in his proper perspective. A justice of the peace should not only be, but should always appear to be detached from the controversy, devoting due regard to procedural rights of the accused.

Inasmuch as the case before us is on certiorari, we cannot consider the merits of this controversy but must confine our attention to the regularity of the record. Our inquiry must be a determination of the existence of fundamental defects which affect the substantial rights of defendant and constitute a denial of that due process of law which is characteristic of our legal system.

Our first inquiry then must be to determine if this magistrate had jurisdiction of the case in the first place. Without jurisdiction, all that followed was a nullity.

It is too fundamental to require authority that an alderman has no jurisdiction outside his ward, unless

conferred upon him by an act of assembly which applies to a special case. Consequently, when an objection is made to the lack of jurisdiction of an alderman, we must look to the records to determine the existence of the jurisdictional facts. The presence of all the facts necessary to give the alderman jurisdiction must affirmatively appear on the record. The proper place of these elements is in the information or complaint. The complaint or information is the foundation of the proceedings, and the jurisdictional facts must appear on its face by a plain statement of them. This requirement is so fundamental that its absence vitiates the entire proceedings, and the defect may be taken advantage of at any stage of the proceeding and is not waived by the appearance of defendant before the alderman.

An examination of the information which allegedly was the basis of this proceeding fails to disclose the necessary jurisdictional facts. We do not know which ward elected this alderman, and, therefore, we are unable to determine the extent of his jurisdiction.

All that is disclosed to us is that the issuing authority is one of the aldermen in the City and County of Lebanon and State of Pennsylvania. Inasmuch as an alderman has no jurisdiction outside the ward in which he is commissioned, it is axiomatic that the information or complaint must contain this jurisdictional recitation: Act of May 23, 1874, P. L. 230, sec. 32.

The Third Class City Code invests the mayor of the city with the criminal jurisdiction of an alderman over all of the wards of the city and grants limited civil jurisdiction to actions for penalties or forfeitures imposed by virtue of the ordinances of the city: Act of June 23, 1931, P. L. 932, sec. 1206, as amended, 53 PS §36207.

Section 1018 of the same act, 53 PS §36017, provides that any alderman of the city may, at the request of the mayor, attend the mayor's police court[2] and there perform all such duties and exercise all such powers as to which he has concurrent jurisdiction with the mayor. However, in such a case it is necessary that the alderman's records show that he is sitting at the request of the mayor, and it has been held that a record which does not show the request is defective, and the judgment entered thereon is void: City of Bethlehem v. Durning, 30 Dist. R. 727.

By reason of the alderman's designating himself as "committing magistrate" and by identifying his court as a "magistrate court" on the instrument which we have referred to as a transcript, we are led to the suspicion that the alderman is sitting outside his ward, at the request of the mayor.[3] However, in a question as fundamental as jurisdiction, the matter cannot rest upon suspicion but must be affirmatively shown on the alderman's return or be stricken.

The foregoing of itself is sufficient to discharge this defendant and dismiss the proceeding. However, as we previously indicated, the dearth of decisional law on the problems raised in this proceeding compels us to make a few instructional observations.

As we pointed out hereinbefore, the information or complaint is the basis and foundation upon which the whole proceeding before a magistrate rests, and no such proceeding can be sustained, in the absence of a formal information or complaint signed by the complainant and sworn to in the presence of the magistrate.

---

[2] Variously called police court, magistrate's court and committing magistrate's court.

[3] This is confirmed by the unanswered petition which alleges that the hearing was held in the Municipal Building.

The Act of 1931, supra, provides that all actions and proceedings for violation of the ordinances of a third class city shall be instituted in the corporate name of the city. We cannot be too harshly critical of the magistrate for styling the proceeding in the name of the Commonwealth, for counsel in his petition for writ of certiorari fell into equal error in styling his petition in the name of the Commonwealth. While the correct method of captioning the case is in the name of the city rather than the Commonwealth, we are of the opinion that the failure to so caption the case is an amendable error: Commonwealth v. Rockowitz, 15 D. & C. 2d 735.

We do not intend to minimize the importance of a properly executed and sworn information by overlooking the fact that the information was not signed at the appropriate place and the jurat itself is illegible. Rather, we would prefer to direct our attention to the absence from this magistrate's return of the process by which defendant was brought into court before the magistrate.

The Act of 1931, supra, permits the issuance of a warrant based upon a written complaint. Apparently, no arrest warrant was employed in this procedure, inasmuch as no copy was returned to us nor was mention of its issuance made in the transcript.

The only other process permitted under the act is a summons. The act specifically requires that the summons should not be returnable for a hearing until at least five days after its issuance nor more than eight days therefrom. If a summons process was employed, it was defective in that the hearing was held the day after the alleged violation. The purpose of fixing a time limitation is to allow an accused time to engage counsel and prepare a defense to the charge.

As can readily be seen, an incomplete return such as the one before us renders review on certiorari vir-

tually impossible. Petitioner complains about the invalidity of the summons and from the record we are not certain that that process was employed by the magistrate. We are similarly at a loss to evaluate the legality of a warrant of arrest, if that process was employed, for it, too, is missing from the return.

We are not unmindful that there are occasions when an arrest on view without a warrant is authorized by law. However, this, too, should be disclosed on the record of the proceeding. An examination of the report of arrest, attached hereto as appendix c would tend to negate the conclusion that the arrest was on view, inasmuch as the report reveals that, at the time of the officer's arrival on the scene, "the disturbance has been over". If the officer did not see the violation, he could not legally arrest the defendant without a warrant.[4]

In summary, we cannot emphasize too strongly the importance of a justice of the peace maintaining complete and accurate records of the process employed by him. The record furnishes the basis for the proceedings on certiorari, and it likewise serves to protect a defendant from later prosecution for the same offense. Additionally, the record serves to protect the justice, if he is called upon later to account to some superior court; otherwise it may appear that he has not conformed to the law, or that he has exceeded the bounds of his prescribed jurisdiction.

The contents of a magistrate's record are carefully spelled out in Carringer, Pennsylvania Summary Conviction, at page 63, and we will not further burden this opinion with a recitation of those details. Suffice it to say that obedience to our writ of certiorari re-

---

[4] It would follow then that, if the officer did not witness the violation, his information must be made on "information received which information he believes is true and correct". This, likewise, was not done in this case.

quires a transcript which is to be an exact copy of the docket entries, certified as true and correct by the magistrate, accompanied by the original information and warrant or summons as the case may be. Without these instruments, we are unable to perform the duties imposed upon us under the Constitution of this Commonwealth and by virtue of our office. A return which fails to include these basic and fundamental papers is defective, and any proceedings had thereunder will be decreed void by us.

Therefore, after careful consideration, we will make the following

### ORDER

And now, July 17, 1967, the proceedings against petitioner, George W. Sherk, are dismissed. Costs to be paid by the City of Lebanon. The bail or forfeiture posted by petitioner shall be returned to him or his surety forthwith.

